**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division**

| | | |
|---|---|---|
| **DIANNE WAKEFIELD,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | Civil No. TMD 17-521 |
| **v.** | * | |
| | * | |
| | * | |
| **NANCY A. BERRYHILL,** | * | |
| **Acting Commissioner of Social Security,** | * | |
| | * | |
| **Defendant.[1]** | * | |
| | ************ | |

**MEMORANDUM OPINION GRANTING PLAINTIFF'S
<u>ALTERNATIVE MOTION FOR REMAND</u>**

Plaintiff Dianne Wakefield seeks judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3) of a final decision of the Commissioner of Social Security ("Defendant" or the "Commissioner") denying her applications for disability insurance benefits and for Supplemental Security Income under Titles II and XVI of the Social Security Act. Before the Court are Plaintiff's Motion for Summary Judgment and alternative motion for remand (ECF No. 16) and Defendant's Motion for Summary Judgment (ECF No. 19).[2] Plaintiff contends that the administrative record does not contain substantial evidence to support the Commissioner's

---

[1] On April 17, 2018, Nancy A. Berryhill became the Acting Commissioner of Social Security. *See* 5 U.S.C. § 3346(a)(2); *Patterson v. Berryhill*, No. 2:18-cv-00193-DWA, slip op. at 2 (W.D. Pa. June 14, 2018).

[2] The Fourth Circuit has noted that, "in social security cases, we often use summary judgment as a procedural means to place the district court in position to fulfill its appellate function, not as a device to avoid nontriable issues under usual Federal Rule of Civil Procedure 56 standards." *Walls v. Barnhart*, 296 F.3d 287, 289 n.2 (4th Cir. 2002). For example, "the denial of summary judgment accompanied by a remand to the Commissioner results in a judgment under sentence four of 42 U.S.C. § 405(g), which is immediately appealable." *Id.*

decision that she is not disabled. No hearing is necessary. L.R. 105.6. For the reasons that follow, Plaintiff's alternative motion for remand (ECF No. 16) is **GRANTED**.

I

**Background**

On February 22, 2017, Plaintiff filed a complaint in this Court seeking review of the Commissioner's decision. Upon the parties' consent, this case was transferred to a United States Magistrate Judge for final disposition and entry of judgment. The case then was reassigned to the undersigned. The parties have briefed the issues, and the matter is now fully submitted.

II

**Summary of Evidence**

A.  **Plaintiff's Testimony**

In his October 13, 2015, decision, Administrative Law Judge ("ALJ") Eugene Bond reviewed Plaintiff's testimony from the hearing on June 25, 2015, where Plaintiff and a vocational expert ("VE") testified:

> [Plaintiff] alleges disabling limitations due to panic, anxiety attacks, COPD, depression, high blood pressure, and vertigo. [Plaintiff] testified that she stopped working because she was terminated. She stated that she does not know why she was terminated. She stated that she has not looked for other work because she is ill. She stated that she can stand for ten minutes at a time. She testified that she stopped driving one year ago, but she stopped because her neck "really really bothers" her. She reported daily neck pain radiating throughout her arms and legs, worse in her right arm. [Plaintiff] stated that she has low back pain. She reported that her daughter lives with her; her daughter and sister do grocery shopping and she receives rides to doctor's appointments. On a typical day, she wakes up in pain, takes her prescribed medications, and lies in her bed. [Plaintiff] stated that she takes medication for depression and anxiety. She reported medication side effects including sleepiness and drowsiness. [Plaintiff's] representative added that [Plaintiff] uses a cane for ambulation.

R. at 17 (citation omitted).

**B.** **VE Testimony**

The VE testified that a hypothetical individual with the same age, education, and work experience as Plaintiff and with the residual functional capacity ("RFC") outlined below in Part III could perform Plaintiff's past relevant work as a group home manager and mental health worker. R. at 68-69. Being off task up to 20% of a day would preclude all work, however. R. at 69. A person absent for two days per week could not perform any work on a full-time basis. R. at 69. According to the VE, his testimony was consistent with the *Dictionary of Occupational Titles*.[3] R. at 69-70.

## III

## Summary of ALJ's Decision

On October 13, 2015, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since the amended alleged onset date of July 11, 2009; and (2) had an impairment or a combination of impairments considered to be "severe" on the basis of the requirements in the Code of Federal Regulations; but (3) did not have an impairment or a combination of impairments meeting or equaling one of the impairments set forth in 20 C.F.R. pt. 404, subpt. P, app. 1; and (4) could perform her past relevant work as a group home manager and mental health worker. R. at 14-22. The ALJ thus found that she was not disabled from "June 19, 2007 [sic]," through the date of the decision. R. at 22.

---

[3] "The Social Security Administration has taken administrative notice of the *Dictionary of Occupational Titles*, which is published by the Department of Labor and gives detailed physical requirements for a variety of jobs." *Massachi v. Astrue*, 486 F.3d 1149, 1152 n.8 (9th Cir. 2007); *see Pearson v. Colvin*, 810 F.3d 204, 205 n.1 (4th Cir. 2015); *DeLoatche v. Heckler*, 715 F.2d 148, 151 n.2 (4th Cir. 1983); 20 C.F.R. §§ 404.1566(d)(1), 416.966(d)(1). "Information contained in the [*Dictionary of Occupational Titles*] is not conclusive evidence of the existence of jobs in the national economy; however, it can be used to establish a rebuttable presumption." *English v. Shalala*, 10 F.3d 1080, 1085 (4th Cir. 1993).

In so finding, the ALJ found that, with regard to concentration, persistence, or pace, Plaintiff had moderate difficulties. R. at 15. "[Plaintiff] reported difficulty with completing tasks and concentration. She testified regarding medication side effects including sleepiness and drowsiness. However, treatment notes, cited below, do not routinely indicate problems with concentration. Therefore, the evidence supports moderate difficulties in concentration, persistence, and pace." R. at 15 (citation omitted). The ALJ then found that Plaintiff had the RFC

> to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the work must be skilled. [Plaintiff] requires a sit-stand option at the work location, defined as sitting for four hours and standing for one hour alternatively as needed and as required; requirement for a hand-held medically assistive device, namely a cane, which is used for standing, walking, and balancing constantly; physical function limitations of reaching, handling, feeling, pushing, and pulling frequently, and bilateral leg operation frequently; environmental requirement of frequent exposure to dust, odors, fumes, gases, and pulmonary irritants; ability to interact with supervisors frequently, coworkers occasionally, and the general public occasionally; and ability to perform work that does not require satisfaction of production pace.

R. at 16. The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." R. at 17.

> [Plaintiff's] regular activities suggest greater abilities than alleged. While [Plaintiff] testified that she mostly stays in bed during the day and requires help with personal care, her function report [from August 2011] indicates that she has no problems with personal care; she prepares simple meals; she performs household chores such as some cleaning and laundry; she shops in stores for groceries and household items; talks with family on the internet; and hosts social gatherings for special occasions.

R. at 17; *see* R. at 330-38.

# IV

## Disability Determinations and Burden of Proof

The Social Security Act defines a disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-80 (2003). "If at any step a finding of disability or nondisability can be made, the [Commissioner] will not review the claim further." *Thomas*, 540 U.S. at 24, 124 S. Ct. at 379; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant has the burden of production and proof at steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a "severe" impairment, i.e., an impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).[4]

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford*, 734 F.3d at 293.

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4). RFC is a measurement of the most a claimant can do despite his or her limitations. *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a

---

[4] The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Yuckert*, 482 U.S. at 141, 107 S. Ct. at 2291.

consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at step four, age, education, and work experience. *See Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *See Walls*, 296 F.3d at 290; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find that the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

V

**Substantial Evidence Standard**

The Court reviews an ALJ's decision to determine whether the ALJ applied the correct legal standards and whether the factual findings are supported by substantial evidence. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). In other words, the issue before the Court "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is

supported by substantial evidence and was reached based upon a correct application of the relevant law." *Id.* The Court's review is deferential, as "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Under this standard, substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. *See Hancock*, 667 F.3d at 472; *see also Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).

In evaluating the evidence in an appeal of a denial of benefits, the court does "not conduct a *de novo* review of the evidence," *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), or undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Hancock*, 667 F.3d at 472. Rather, "[t]he duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court." *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996). When conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).

## VI

### Discussion

Plaintiff contends that the ALJ erroneously assessed her RFC contrary to Social Security Ruling[5] ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996). Pl.'s Mem. Supp. Mot. Summ. J. 4-15,

---

[5] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding on all components of the Social Security Administration. *Heckler v. Edwards*, 465 U.S. 870, 873 n.3, 104 S. Ct. 1532, 1534 n.3 (1984); 20 C.F.R. § 402.35(b)(1). "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." *Pass*, 65 F.3d at 1204 n.3.

ECF No. 16-1. Plaintiff maintains that the ALJ failed to perform properly a function-by-function assessment of her ability to perform the physical and mental demands of work. *Id.* at 6. In particular, she contends that the ALJ did not explain his assessment of her RFC and how she was capable of performing skilled work despite her moderate limitations in concentration, persistence, or pace. *Id.* at 6-8. Plaintiff further asserts that the ALJ failed to evaluate adequately the opinion evidence. *Id.* at 8-15. For the reasons discussed below, the Court remands this case for further proceedings.

> SSR 96-8p explains how adjudicators should assess RFC and instructs that the RFC
>
> "assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions" listed in the regulations. "Only after that may [residual functional capacity] be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." The Ruling further explains that the residual functional capacity "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."

*Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (alteration in original) (footnote omitted) (citations omitted). The Fourth Circuit has held, however, that a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis "is inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested.'" *Id.* (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam)). Rather, remand may be appropriate "where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* (quoting *Cichocki*, 729 F.3d at 177). The court in *Mascio* concluded that remand was appropriate because it was "left to guess about how the ALJ arrived at his conclusions on [the claimant's] ability to perform

relevant functions" because the ALJ had "said nothing about [the claimant's] ability to perform them for a full workday," despite conflicting evidence as to the claimant's RFC that the ALJ did not address. *Id.* at 637; *see Monroe v. Colvin*, 826 F.3d 176, 187-88 (4th Cir. 2016) (remanding because ALJ erred in not determining claimant's RFC using function-by-function analysis; ALJ erroneously expressed claimant's RFC first and then concluded that limitations caused by claimant's impairments were consistent with that RFC).

Plaintiff contends that remand is warranted because the ALJ failed to explain how she was capable of performing skilled work despite her moderate limitations in concentration, persistence, or pace. Pl.'s Mem. Supp. Mot. Summ. J. 8, ECF No. 16-1. The regulations define "unskilled work" as work that can be learned by demonstration in less than thirty days. *Lanigan v. Berryhill*, 865 F.3d 558, 565 (7th Cir. 2017) (citing 20 C.F.R. §§ 404.1568, 404.1520). However, "the speed at which work can be learned is unrelated to whether a person with mental impairments—i.e., difficulties maintaining concentration, persistence, or pace—can perform such work." *Id.* at 565-66. Plaintiff's assertion in this regard thus is unavailing.

The ALJ failed, however, to explain how, despite Plaintiff's limitations, including her moderate difficulties in maintaining concentration, persistence, or pace, she could remain on task for more than 80% of an eight-hour workday or not be absent two days per week from a job. The ALJ "must *both* identify evidence that supports his conclusion *and* 'build an accurate and logical bridge from [that] evidence to his conclusion.'" *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) (alteration in original) (quoting *Monroe*, 826 F.3d at 189). In particular, the ALJ "must build a logical bridge between the limitations he finds and the VE evidence relied upon to carry the Commissioner's burden at step five in finding that there are a significant number of jobs available to a claimant." *Brent v. Astrue*, 879 F. Supp. 2d 941, 953 (N.D. Ill. 2012). An

ALJ's failure to do so constitutes reversible error. *See Lewis v. Berryhill*, 858 F.3d 858, 868 (4th Cir. 2017).

Here, the ALJ found that in 2011 Plaintiff reportedly had no problems with personal care and could prepare simple meals, perform household chores, shop for groceries, talk with her family, and host social gatherings. R. at 17. Plaintiff also reported, however, that she prepared meals weekly with her daughter's assistance. R. at 332. She further reported that she performed household chores only weekly, depending on how she felt, and shopped for groceries with a family member. R. at 332-33. Plaintiff testified in 2015 that her daughter now cooked and shopped for groceries, as she no longer cooked and only made sandwiches and that she required assistance with personal care. R. at 60-61, 62, 65. Because of her pain, she spent most of her day lying in bed. R. at 62. The ALJ here "did not acknowledge the limited extent of those activities as described by [Plaintiff] or explain how those activities showed that [she] could sustain a full-time job." *Brown v. Comm'r Soc. Sec. Admin.*, 873 F.3d 251, 269 (4th Cir. 2017). "[A] person's ability to perform daily activities, especially if that can be done only with significant limitations, does not necessarily translate into an ability to work full-time." *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013); *see Lewis*, 858 F.3d at 868 n.3; *Ross v. Apfel*, 218 F.3d 844, 849 (8th Cir. 2000) ("The ability to perform sporadic light activities does not mean that the claimant is able to perform full time competitive work.").

> The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . , and is not held to a minimum standard of performance, as she would be by an employer.

*Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012). Because the ALJ's "analysis is incomplete and precludes meaningful review," remand is appropriate. *Monroe*, 826 F.3d at 191.

In short, the inadequacy of the ALJ's analysis frustrates meaningful review. *See Lanigan*, 865 F.3d at 563 (remanding because, *inter alia*, ALJ did not build accurate and logical bridge between claimant's moderate difficulties in various functional areas and ALJ's finding that claimant would not be off task more than 10% of workday); *Ashcraft v. Colvin*, No. 3:13-cv-00417-RLV-DCK, 2015 WL 9304561, at *11 (W.D.N.C. Dec. 21, 2015) (remanding under fourth sentence of 42 U.S.C. § 405(g) because court was unable to review meaningfully ALJ's decision that failed to explain exclusion from RFC assessment an additional limitation of being 20% off task that VE testified would preclude employment). Remand under the fourth sentence of 42 U.S.C. § 405(g) thus is warranted, and the Court does not address Plaintiff's remaining arguments. *See Monroe*, 826 F.3d at 189; *see also Testamark v. Berryhill*, __ F. App'x __, No. 17-2413, 2018 WL 4215087, at *3 n.2 (4th Cir. Aug. 31, 2018) (per curiam).

## VII

### Conclusion

For the reasons stated above, Defendant's Motion for Summary Judgment (ECF No. 19) is **DENIED**. Plaintiff's Motion for Summary Judgment (ECF No. 16) is **DENIED**. Plaintiff's alternative motion for remand (ECF No. 16) is **GRANTED**. Defendant's final decision is **REVERSED** under the fourth sentence of 42 U.S.C. § 405(g). This matter is **REMANDED** for further proceedings consistent with this opinion. A separate order will issue.

Date: September 26, 2018                                /s/
                                                        Thomas M. DiGirolamo
                                                        United States Magistrate Judge